## Private Sale of County Owned Property to Lebanon County Redevelopment Authority

*Earl A. Brubaker*, for petitioners.
*Richard W. Davis*, for protestants.

GATES, P. J., April 19, 1965.—On February 26, 1965, the Commissioners of Lebanon County, Pa., presented a petition to us, averring that the old Lebanon County Courthouse was abandoned approximately three years ago, and that the county government has moved to the new municipal building in the City of Lebanon. Further, the commissioners declared the old county courthouse property as surplus property, and that it was no longer needed for any purpose by the County of Lebanon. The petition reveals that the old courthouse property is included in a tract scheduled for redevelopment by the Lebanon County Redevelopment Authority in a program designated as "Project No. 2". The commissioners engaged two independent qualified appraisers, who determined that the highest appraisement for the property is $173,000. The redevelopment authority has made an offer to purchase the old courthouse property for that amount, and their purpose in acquiring it is to include it within the redevelopment "Project No. 2", which contemplates that the property will be demolished. The petition further represents that the commissioners are of the opinion that the offer of the redevelopment authority is consistent with offers made to other property owners within the project area and that the price is higher than they could obtain at a public sale. The commissioners reveal in their petition that on February 25, 1965, they resolved to sell the old courthouse property to the Lebanon County Redevelopment Authority for $173,000, and they thus petitioned us for approval of the sale under the provisions of the Act of August 9, 1955, P. L. 323, sec. 2306, et seq., 16 PS §2306, et seq.

Upon presentation of the petition to us, we ordered that there be a hearing, and that notice be given in two local publications of general circulation in the county, in accordance with the requirements of the act. On the date fixed for the hearing, March 24, 1965, two

local taxpayers filed written objections and exceptions to the petition, averring, inter alia, that the county commissioners have not made sufficient inquiry and investigation into the facts concerning the intrinsic value of the old courthouse to the citizens of our community. The objectors set forth numerous potential uses for which the old courthouse property could be made, including the establishment of a historical site, provide space for art exhibits, office space for philanthropic and community organizations, space for dramatic performances, space for community organizations such as the Lebanon County Travel Bureau, Lebanon County Chamber of Commerce, Center of Lebanon Association and similar organizations and uses.

The commissioners requested a continuance of the hearing in order to study the objections and exceptions and make an answer thereto. The continuance was granted, and an answer was filed on March 31, 1965. The gist of the answer of the commissioners is that no legal grounds have been set forth by the objectors which would justify our refusal to approve the sale. This issue was set down for argument on April 14, 1965. We have now heard the argument of the commissioners and of the objectors, and written briefs have been submitted to us.

The County Code of August 9, 1955, P. L. 323, secs. 2306, 2307, and 2311, clearly authorizes the county commissioners to sell unused county owned property. Both sections 2306 and 2311 require the prior approval of the court of common pleas after a hearing. The County Code, unfortunately, is silent as to the scope of the hearing and as to the duties of the court of common pleas with respect to that hearing. We have found no case authority interpreting these sections of The County Code, and none have been submitted to us by counsel. Therefore, we view this as a case of first impression.

We have previously had occasion to opine with respect to the role of the judiciary in reviewing the actions of an independent branch of government in Shuey v. Lebanon County, 10 Lebanon 84. What we said there is most appropriate in this case. However, we feel that the principles need again be restated, so that there can be no confusion and, perhaps, repetition of proceedings of this sort in our courts.

We have observed in recent months that the judiciary has somewhat earned widespread criticism for the legislative species of decisions. This has been an ecumenical criticism, and it includes local, State and Federal courts. We cut our governmental teeth on the concept of checks and balances in our Republic. It has been said that our Constitution is unique in its dogma of the separation of powers. However, the division of governmental powers into legislative, executive and judicial branches is not an exact classification. It is, in fact, an abstract and general concept, true in theory; but in actual practice, complete separation is impossible. Nonetheless, we think that courts should be slow to pronounce the legislative and executive branches to have been mistaken in their manifested opinion upon matters resting wholly within their will, when for so long a time, everything has been conducted upon that footing. Thus, when the legislative branch has provided for judicial review of administrative decisions, extreme caution must be exercised by the court in its approach to the role of the judiciary in the review.

The overriding and compelling legal presumption is that the municipal officers have acted properly for the public good: Parker v. Philadelphia, 391 Pa. 242. "Presumptively, these officials must be regarded as acting properly and for the public good. Absent any allegations in this complaint of either fraud or misconduct and absent any allegations of fact which would indicate that these municipal officials have acted or

are acting either in abuse of their power or in a capricious or arbitrary manner, judiciary intervention cannot be justified": Hyam v. Upper Montgomery Joint Authority, 399 Pa. 446 at 457.

The General Assembly has vested in the elected county commissioners the power and responsibility of managing the political and governmental affairs of our community. It has given them the power to buy, sell and manage real estate for public purposes. It is the intent of the legislature that the elected representatives of the people, the county commissioners, exercise *their* judgment within the sphere of the legislative grant. Courts are, and should be, loathe to interfere with or control the performance of the duties of such officials, in the absence of *fraud, official misconduct, arbitrary,* and *capricious abuse of power or discretion.*

We are of the opinion, therefore, that the role of the court is clear. The court will not review the actions of governmental bodies or administrative tribunals involving acts of discretion in the absence of bad faith, fraud, capricious action or abuse of power; nor will they inquire into the wisdom of such actions, or into the details of the manner adopted to carry them into execution. That we might have a different opinion or judgment in regard to the action of the agency is not a sufficient legal reason for interference. Judicial discretion must not be substituted for administrative or legislative prerogatives. If we were to do so, we would violate the very spirit of our being: Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566.

Thus, we are of the opinion that when the legislature adopted The County Code and included the requirement of court approval for sales of county owned property by the commissioners after a hearing, the intent was not to have the court second guess the county commissioners as to the wisdom of their action. Rather, the legislature intended that our review, and, therefore,

the scope of the hearing, be limited to matters of bad faith, fraud, capricious action or abuse of power.

These objectors do not allege or contend that the county commissioners are guilty of bad faith or fraud. They concede that the appropriate statutory procedures have been followed by the commissioners. They do contend, however, that the commissioners are guilty of capricious action or abuse of power. With this contention, we do not agree.

If we were to accept as true all of the factual averments made by the objectors, our conclusion would still be the same. In brief, the contention of the objectors is twofold: First, that the commissioners did not make sufficient inquiry into other uses for which the old courthouse property could be put, and, in the second place, they contend that our county is in need of this property for cultural and other community activities. We conclude that these contentions, even if true, are not reviewable by us. If it were otherwise, then every action taken by the commissioners or any other legislative, quasi-legislative or administrative body would be subject to review, and the momentum of governmental progress would come to a complete halt. Our courts would be pervaded with litigation brought by minority or dissident groups challenging the wisdom and propriety of governmental action. This was never meant to be the role of the judiciary, and it would be, in practice, an unworkable proposition. For example, assume that we would refuse to approve the commissioner's petition to sell the old courthouse, because we feel that better use of the property could be made by having it renovated and used for cultural pursuits. Assuming further, that the commissioners disagreed with the court, the matter would end there, unless we would have the power and the duty to sit in with the commissioners at their regular meetings and compel them to appropriate money to effect the necessary renovations and compel

them to resolve to use the property in the manner in which we believe it should be used. Of course, we do not have that power; nor is it our duty. These are matters exclusively within the discretion of the county commissioners, who are elected to represent and act for the good of all of the people in our community. When they have taken action, the law presumes that they have acted properly for the public good, and we shall not review their action, unless it is alleged that they have acted in bad faith, fraudulently or capriciously. In the instant case, the legal effect of the allegations made by the objectors does not amount to fraud, bad faith or capriciousness. Therefore, they have not stated legally sufficient objections or a factual basis which would require us to hear testimony in support thereof, or to further prolong the wishes of the county commissioners.

Therefore, after due and careful consideration, we will make the following

### ORDER

And now, to wit, April 19, 1965, the objections to the petition of the Lebanon County Commissioners to make private sale of the old courthouse building, situate at Eighth and Cumberland Streets in the City of Lebanon, are overruled, and the court hereby approves the private sale of the old courthouse tract on the northwest corner of Eighth and Cumberland Streets, Lebanon, Pennsylvania, said premises more particularly bounded and described as follows, to wit:—

\* \* \* \* \*

Further, it is hereby ordered and decreed that the County Commissioners of Lebanon County be, and the same are hereby authorized and directed to make a private sale of the property hereinbefore described, deeding the old courthouse tract, situate at the northwest corner of Eighth and Cumberland Streets,

Lebanon, Pennsylvania to the Lebanon County Redevelopment Authority, for the price or consideration of $173,000, and that upon payment of the said sum of $173,000 by the said Lebanon County Redevelopment Authority, the said county commissioners shall make conveyance of said premises in fee simple to the Lebanon County Redevelopment Authority, executing and delivering a good and sufficient deed therefor.